UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATHANIEL W., et al.,

    Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH, et al.,

    Defendants.

Case No. 17-cv-06341-PJH

**ORDER RE DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 20

Defendants United Behavioral Health, dba Optum ("Optum"); The Charles Schwab Group Life, Accidental Death and Dismemberment, Death Benefit, Medical, Dental and Vision Plan Amended and Restated (named in the complaint as The Charles Schwab Corporation Benefit Plan[1]) (the "Plan"); and Charles Schwab & Co., Inc.'s ("Schwab") motion to dismiss came on for hearing before this court on May 2, 2018. Plaintiffs appeared through their counsel, Katie Spielman and David Lilienstein. Defendants appeared through their counsel, Elise Klein. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

Plaintiffs Nathaniel W. ("Nathaniel") and George W. filed their complaint on October 31, 2017, asserting four causes of action: (1) a claim under ERISA

---

[1] Defendants identify the proper defendant as "The Charles Schwab Group Life, Accidental Death and Dismemberment, Death Benefit, Medical, Dental and Vision Plan Amended And Restated." Dkt 20 at 1–2 & n.1.

§ 502(a)(1)(B) for recovery of benefits due under the terms of the employee benefits plan against all defendants; (2) breach of fiduciary duty against Optum; (3) breach of fiduciary duty against Schwab; and (4) "statutory penalties" pursuant to a breach of 29 U.S.C. § 1132 against Optum, Schwab, and the Plan.

George W. was an employee of Schwab who participated in the Plan, and Nathaniel is his son and was a beneficiary of the Plan. Compl. ¶¶ 2–7. Plaintiffs allege that Schwab is the "Plan Administrator" and that Optum is the "Claim Administrator" that administers claims for benefits under the Plan on behalf of Schwab. Id. ¶¶ 2–5.

Nathaniel was diagnosed with and suffers from, inter alia, Generalized Anxiety Disorder, Major Depression, Obsessive Compulsive Disorder, and suicidal ideations. Id. ¶ 8. He began experiencing symptoms at age 7, has been seeing a therapist since age 10, has had trouble at school because of his conditions, and has developed behavioral issues. Id. ¶¶ 9–12. Nathaniel developed an eating disorder, which in combination with his other issues resulted in a psychiatric hospitalization and residential treatment care at Mountain Valley Treatment Center ("Mountain Valley"). Id. ¶ 13. He was discharged from Mountain Valley to Franciscan Hospital for Children due to self-harm and suicidal ideations, among other reasons. Id. ¶ 14. He then returned to Mountain Valley and was later enrolled in Waypoint Academy, from which he was discharged due to abusive behavior to staff. Id. ¶¶ 15–16. He was next admitted to the University of Utah Health Care Neuropsychiatric Institute to address psychological disturbances, and after discharge was admitted to Pacific Quest residential treatment center ("Pacific Quest"). Id. ¶¶ 17–18.

Plaintiffs filed claims for Nathaniel's time at Pacific Quest with the Plan, and Optum denied coverage on the basis that the level of care and/or requested treatment was not medically necessary. Id. ¶¶ 19–20. Plaintiffs appealed the denial, which the Claim Administrator rejected. Id. ¶¶ 21–22. Plaintiffs also allege that they requested copies of their policy and claim file and received those materials over fourteen months after their request. Id. ¶ 27.

2

The parties do not dispute the following relevant dates:

| Date | Event |
|---|---|
| May 28, 2013 – February 28, 2014[2] | Nathaniel receives care from Mountain Valley and Pacific Quest at various times in this period. Dkt. 24 at 1. |
| July 14, 2014 | Optum sends letter denying the Mountain Valley claims on plaintiffs' first-level appeal. Dkt. 20-4 ("Ciletti Decl."), Ex. 3. |
| September 23, 2014 | Optum sends letter denying the Pacific Quest claims on plaintiffs' first-level appeal. Ciletti Decl., Ex. 7. |
| December 12, 2014 | Optum sends letter denying the Mountain Valley claims on plaintiffs' second-level appeal. Ciletti Decl., Ex. 4. |
| | Optum sends letter denying the Pacific Quest claims on plaintiffs' second-level appeal. Ciletti Decl., Ex. 8. |
| February 18, 2015 | Optum sends letter advising plaintiffs they previously exhausted their administrative remedies under the Plan with respect to the Mountain Valley claims. Ciletti Decl., Ex. 5. |
| July 9, 2015 | The independent review organization ("IRO") sends a letter denying the Pacific Quest claims on external appeal review. Ciletti Decl., Ex. 9. |
| January 29, 2016 | Plaintiffs request Nathaniel's policy and claim file from defendants. Dkt. 24-1 ("Lilienstein Decl.") ¶ 3, Ex. A. |
| May 10, 2016 | Optum approves 19 days of treatment from dates of service in August 2013. Lilienstein Decl. ¶ 8, Ex. F. |

---

[2] For the purposes of this motion, the court accepts as true plaintiffs' contention that "Nathaniel received care in two residential treatment programs – Mountain Valley and Pacific Quest – at various times between on or about May 28, 2013 and February 28, 2014." Dkt. 24 at 1. Defendants offer more specific dates that are not materially different.

3

| Date | Event |
|---|---|
| April 7, 2017 | Optum provides plaintiffs with claim file. Lilienstein Decl. ¶ 18, Ex. P. |
| April 14, 2017 | Plaintiffs file claims with Optum for dates of service from May 28, 2013 – February 28, 2014 at Mountain Valley and Pacific Quest.  Lilienstein Decl. ¶ 13, Ex. K. |
| October 31, 2017 | Plaintiffs file this action.  Dkt. 1. |

## DISCUSSION

### A. Legal Standard

#### 1. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Where dismissal is warranted, it is generally without prejudice, unless it is

4

clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)); see also Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document"). The court may also consider matters that are properly the subject of judicial notice (Lee v. City of L.A., 250 F.3d 668, 688–89 (9th Cir. 2001)), exhibits attached to the complaint (Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims (No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003)).

### 2. Motion to Stay

A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Use of this power "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Id. at 254–55; see also Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) ("the district court did not abuse its discretion by staying the action pending receipt of the results of arbitration").

In determining whether it should exercise its discretion to grant a stay, the court should consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues,

5

proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254–55). Additionally, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 864 (9th Cir. 1979).

**B.     Analysis**

Defendants move to dismiss each of plaintiffs' causes of action: (1) recovery of benefits due under the terms of the employee benefits plan under ERISA § 502(a)(1)(B);[3] (2) breach of fiduciary duty against Optum; (3) breach of fiduciary duty against Schwab; and (4) "statutory penalties" pursuant to a breach of 29 U.S.C. § 1132.[4] In the alternative, defendants move to stay the action on the ground that Nathaniel is a member of a class in a pending class action which addresses certain issues raised in this action.

**1.     Plaintiffs' Claim for Recovery of Benefits**

Plaintiffs allege that Optum improperly denied their healthcare claims under the terms of the Plan, and they bring a claim under 29 U.S.C. § 1132(a)(1)(B) to recover benefits allegedly due and to enforce plaintiffs' rights under the terms of the Plan. Compl. ¶¶ 5, 30–33. Defendants move to dismiss the claim on the ground that it is time-barred by the Plan's limitations periods. Dkt. 20 at 1.

"A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). "ERISA does not provide its own statute of limitations for suits to recover benefits under 29 U.S.C. § 1132(a)(1)(B)." Withrow v. Halsey, 655 F.3d 1032, 1036 (9th Cir. 2011). Rather, where an ERISA plan specifies a limitations period, the

---

[3] ERISA § 502(a)(1)(B) is codified at 29 U.S.C. § 1132(a)(1)(B).
[4] The parties agreed at the hearing to dismiss plaintiffs' fourth claim, for statutory penalties pursuant to a breach of 29 U.S.C. § 1132, as asserted against the Plan. As such, that claim is DISMISSED as asserted against the Plan.

6

court "must give effect" to it "unless [it] determine[s] either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provision from taking effect." Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 108–09 (2013) ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan.").

When determining the Plan's limitations period, the court interprets the terms of ERISA policies "in an ordinary and popular sense as would a person of average intelligence and experience." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990) (quoting Allstate Insurance Co. v. Ellison, 757 F.2d 1042, 1044 (9th Cir. 1985)). Ambiguous language is construed in favor of the insured and against the insurer. McClure v. Life Ins. Co. of N. Am., 84 F.3d 1129, 1134 (9th Cir. 1996). But the court "will 'not artificially create ambiguity where none exists.'" Evans, 916 F.2d at 1441 (quoting Allstate Insurance Co., 757 F.2d at 1044). If a reasonable interpretation favors the insurer and a competing interpretation would be "strained," the court will not "torture or twist the language of the policy." Id.

The Summary Plan Description ("SPD") is "a plan document and should be considered when interpreting an ERISA plan." Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1143 (9th Cir. 2002). "Furthermore, the SPD is the 'statutorily established means of informing participants of the terms of the plan and its benefits' and the employee's primary source of information regarding employment benefits." Id. ("the SPD is part of the ERISA plan") (quoting Pisciotta v. Teledyne Indus., 91 F.3d 1326, 1329 (9th Cir. 1996)).

There are three relevant limitations periods in the Plan. First, there is a period to submit a claim measured from the date a healthcare service is provided. Second, there is a period to either claim or forfeit a benefit payment measured from the date on which it is payable. Third, there is a period to file a civil action measured from the date the final internal appeal of a claim is denied. The court "must give effect" to the Plan's limitations periods unless "the period is unreasonably short" or "a 'controlling statute' prevents the

7

limitations provision from taking effect[.]" Heimeshoff, 571 U.S. at 109.

### a. Claim-Filing and Forfeiture Limitations Periods

The relevant SPDs make clear under the heading "Filing a Claim" and subheading "Filing Deadline" that "[t]he deadline for filing a claim is 12 months after the date of service." Dkt. 20-1 ("Uchida Decl."), Ex. 1 at 2–4, 65; id., Ex. 2 at 2–4, 59. That provision makes clear that "[t]he claims administrator may deny payment for claims submitted more than 12 months after the date the services were provided." Id.

The very next subheading in the SPDs is titled "Forfeitures" and states that "if you (or your designee) fail to claim an amount due to you within five years of the date on which the benefit amount is payable to you under the plan, then the amount shall be forfeited . . . provided that the claims administrator has exercised due and proper care in attempting to make the payment to you by providing notice at your last known address." Id.

Plaintiffs argue that they filed claims on April 14, 2017 for dates of service spanning "various times between on or about May 28, 2013 and February 28, 2014." Dkt. 24 at 1, 4–5, 8. Plaintiffs do not argue that the twelve-month claim-filing limitations period is unreasonably short or that a controlling statute prevents it from taking effect.[5] Rather, plaintiffs argue that their healthcare claims are not in fact barred by the Plans' limitations period because the claims were filed within what plaintiffs argue is the proper five-year limitations period. Dkt. 24 at 5–7.

Under its obvious and most reasonable interpretation, the Plan unambiguously provides a twelve-month deadline for filing a healthcare claim from the date of service. Any other finding would strain the plain language of the SPDs. Although plaintiffs argue otherwise, the "Forfeiture" provision cannot reasonably be read to provide a limitations period for filing healthcare claims. The "Filing a Claim" provision is exceedingly clear on its own terms. Additionally, the "Forfeiture" provision is itself clear on its own terms. It

---

[5] Plaintiffs do argue that the Plan's limitations period for filing a civil claim is unreasonable, as discussed below. See Dkt. 24 at 2, 10.

8

addresses money the Plan has already determined it owes a member or beneficiary, and it requires that the claims administrator provide notice to the member before finally rendering the member's right to payment forfeit. Because plaintiffs' April 14, 2017 submissions were made outside of the twelve-month limitations period for every date of service from May 28, 2013 to February 28, 2014, any claims for those services filed on April 14, 2017 would have been made beyond the Plan's limitations period.

### b. Civil Action Under ERISA Limitations Period

The SPDs provide that "[a]fter you have exhausted the claims processes, you may only bring a civil action under ERISA within one year from the date of the Claim Administrator's final decision regarding your claim for benefits." Uchida Decl., Ex. 1 at 136; id., Ex. 2 at 130.

Defendants argue that the claims processes were exhausted when the Claim Administrator issued its final decision regarding plaintiffs' healthcare claims on December 12, 2014. Dkt. 29 at 4–5. As such, defendants argue the one-year limitations period expired before plaintiffs filed this action on October 31, 2017.

Plaintiffs argue that the court should extend or toll the Plan's limitations period for filing a civil action for five reasons: (1) the Claim Administrator issued a partial overturn of a prior determination as late as May 2016, meaning the decision was not final until then (Dkt. 24 at 1, 7); (2) defendants led plaintiffs to believe that their requests for copies of their claim file were being processed, and defendants knowingly and intentionally deprived plaintiffs of the Plan document and other information (Dkt. 24 at 8–10); (3) Optum's claim denial failed to apprise plaintiffs that a limitations period existed (Dkt. 24 at 10); (4) the court should equitably estop defendants from enforcing the contractual limitations period (Dkt. 24 at 9–11); and (5) the period is "unreasonably short" and must otherwise be extended under Heimeshoff, 571 U.S. at 109. The court addresses each in turn.

First, even if plaintiffs were correct that no final decision was issued until May 2016, that fact would be unavailing. Even if that were true, the one-year limitations

9

1    period would have begun running in May 2016 and expired before plaintiffs filed this
2    action in October 2017.
3    But plaintiffs' claims were in fact denied by defendants' December 12, 2014 letters
4    upholding the denial of the Mountain Valley and Pacific Quest claims on the second (and
5    final) internal appeal. The Plan provides for two levels of administrative appeal following
6    an initial claim denial and then offers an optional external review by an IRO. Uchida
7    Decl., Ex. 1 at 136; id., Ex. 2 at 130 ("You must exhaust the internal claims and appeals
8    process before you can request an external review"). The SDPs provide that when a
9    claim is first denied, any appeal must be submitted within 180 days of a claim denial.
10   Uchida Decl., Ex. 1 at 134; id., Ex. 2 at 127. Optum sent letters denying plaintiffs'
11   Mountain Valley and Pacific Quest claims on plaintiffs' first-level appeals on July 14, 2014
12   and September 23, 2014, respectively. Ciletti Decl., Ex. 3; Ciletti Decl., Ex. 7. A second-
13   level appeal must be submitted within 60 days of the receipt of the decision on the first-
14   level appeal. Uchida Decl., Ex. 1 at 134–35; id., Ex. 2 at 128. Optum sent letters
15   denying plaintiffs' Mountain Valley and Pacific Quest claims on plaintiffs' second-level
16   appeals on December 12, 2014. Ciletti Decl., Ex. 4; Ciletti Decl., Ex. 8 ("This is the Final
17   Adverse Determination of your internal appeal. All internal appeals through Optum have
18   been exhausted."). The SPDs provide for no other internal appeals. In fact, the SPDs
19   could not have required "a claimant to file more than two appeals of an adverse benefit
20   determination prior to bringing a civil action under section 502(a) of the Act[.]" 29 C.F.R.
21   § 2560.503-1(c)(2).
22   After the internal claims processes have been exhausted, the member "may only
23   bring a civil action under ERISA within one year from the date of the Claim
24   Administrator's final decision" regarding the claim for benefits. Uchida Decl., Ex. 1 at 136
25   (emphasis added); id., Ex. 2 at 130 (emphasis added). The December 12, 2014 letters
26   provided the Claim Administrator's (i.e., Optum's) final decision. On February 18, 2015,
27   after the final decision had been issued, Optum sent a letter advising plaintiffs that they
28   had previously exhausted their internal remedies under the Plan with respect to the

Mountain Valley claims. Ciletti Decl., Ex. 5 ("A 2nd level appeal review was conducted on 12/12/2014 and the decision was upheld. This was the final level of appeal for Mountain Valley Treatment Center. Your appeal options are exhausted."). Then plaintiffs requested an external review by an IRO—not with the Claim Administrator, Optum—with respect to the Pacific Quest claims. Ciletti Decl., Ex. 9. Plaintiffs could only request that external review after exhausting the internal appeals process. See Uchida Decl., Ex. 1 at 136; id., Ex. 2 at 130.

Simply put, plaintiffs did not file this civil action within the limitations period—one year from defendants' December 12, 2014 letters providing the Claim Administrator's final decision.[6]

Second, plaintiffs argue the limitations period should be tolled because plaintiffs sought information necessary to file this suit from defendants, but defendants withheld that information. Plaintiffs argue that they requested Nathaniel's policy and claim file on January 29, 2016. Dkt. 24 at 3; Lilienstein Decl. ¶ 3, Ex. A. Even if equitable tolling were appropriate, based on plaintiffs' argument it would be triggered sometime after January 29, 2016 (because defendants would need a reasonable time to reply)—still more than a year after the 2014 claims were finally denied on second-level appeal. Even assuming that defendants' February 18, 2015 letter triggered the final denial instead, plaintiffs' January 29, 2016 request would have been sent only 20 days before the limitations period ended. But plaintiffs agree that defendants had 30 days to provide a response. Dkt. 24 at 9 ("ERISA requires that Plan administrators and fiduciaries furnish plan participants with the claim documents within thirty days of receiving a request."); see also 29 U.S.C. § 1132(c)(1) & (6).

Third, plaintiffs argue the limitations period should be tolled because defendants never informed plaintiffs that a limitations period existed. But plaintiffs do not allege that defendants never provided them with the Summary Plan Description that contains all of

---

[6] Plaintiffs also did not file this action within one year of the February 18, 2015 letter from Optum or the IRO's July 9, 2015 denial of the claims following external review.

11

the limitations periods discussed in this order, including the one-year limitations period to file civil suit. The court will not toll the limitations period because defendants failed to repeat information already available to plaintiffs in the SPDs. See Scharff v. Raytheon Co. Short Term Disability Plan, 581 F.3d 899, 908 (9th Cir. 2009) ("plan participants who have been provided with an SPD are charged with constructive knowledge of the contents of the document").

Fourth, plaintiffs argue that the doctrine of equitable estoppel should toll the contractual limitations period. "As a general rule, a defendant will be estopped from setting up a statute-of-limitations defense when its own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan, 749 F.3d 746, 752 (9th Cir. 2014). "Before estoppel can apply, the following conditions must be met: '1) the party to be estopped must be apprised of the facts; 2) the other party must be ignorant of the true state of facts, and the party to be estopped must have acted so that the other party had a right to believe that the party intended its conduct to be acted upon; and 3) the other party relied on the conduct to its prejudice.'" LaMantia v. Voluntary Plan Administrators, Inc., 401 F.3d 1114, 1119 (9th Cir. 2005) (quoting Hinton v. Pac. Enters., 5 F.3d 391, 396–97 (9th Cir. 1993)).

Regarding the second factor, the court notes that plaintiffs have not plausibly pled that they were "ignorant of the true state of facts." They have not pled any facts to indicate that they were unable to access the SPDs and the included limitations period. Regarding the third factor, plaintiffs do not allege that they relied on defendants' conduct to their detriment. Plaintiffs followed the normal internal appeals process correctly, and then they did not file this complaint in time. They argue that they were awaiting defendants' processing of their requests for information before filing this claim, but plaintiffs did not request that information until after the statute of limitations had already run. As such, plaintiffs have not alleged any reliance that caused prejudice.

Fifth, plaintiffs argue that "Heimeshoff instructs this Court to deny Defendant's

12

motion." Dkt. 24 at 10. They argue that the limitations period is unfair because it can "run[] before the Plan rendered a [truly] final decision" on claims. Dkt. 24 at 2, 10.

But Heimeshoff explains that "even in the rare cases where internal review prevents participants from bringing § 502(a)(1)(B) actions within the contractual period, courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed. If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense. To the extent the participant has diligently pursued both internal review and judicial review but was prevented from filing suit by extraordinary circumstances, equitable tolling may apply." Heimeshoff, 571 U.S. at 105, 114 (citations omitted) (upholding a limitations period beginning "before a participant can exhaust internal review"). For the reasons discussed above, the waiver, estoppel, and equitable tolling doctrines Heimeshoff referenced do not help plaintiffs, because there is no indication that "the administrator's conduct" or "extraordinary circumstances" caused plaintiffs to miss the deadline.

To the extent plaintiffs suggest that Heimeshoff requires the court to hold that any reimbursement of claims following a Claim Administrator's final decision resets the limitations period, the court disagrees. Plaintiffs argue that the court should look to the last time Optum actually acted on a claim to determine when the limitations period begins because otherwise a health insurance plan "can intentionally delay its administrative review of a benefits claim past the limitations period" in order to foreclose civil litigation. Dkt. 24 at 7. First, because the tolling period does not begin until <u>after</u> the Claim Administrator's final decision, delay in reviewing the claim would not prejudice plaintiffs. Subsequent payment from the Plan would not affect a plaintiff's ability to file a civil action, just as defendants' May 10, 2016 action did not prevent plaintiffs from filing a timely civil action in December 2015. Second, Heimeshoff itself expressly declined to extend a limitations period based on the argument that "administrators may attempt to prevent judicial review by delaying the resolution of claims in bad faith" where, under the terms of

13

that plan, the limitations period began "before a participant can exhaust internal review[.]" 571 U.S. at 105, 112. Faced with an even stronger version of plaintiffs' argument, Heimeshoff declined to depart from the ERISA plan's provisions by imposing an amendment to its limitations period. This court likewise declines to impose such a radical amendment contravening the plain language of the Plan.

Because plaintiffs' claim under 29 U.S.C. § 1132(a)(1)(B) cannot prevail because of the Plan's limitations periods, it is clear the complaint cannot be saved by any amendment. As such, the court DISMISSES plaintiffs' first cause of action against all defendants WITH PREJUDICE. See, e.g., Sparling, 411 F.3d at 1013.

### 2. Plaintiffs' Remaining Claims

Plaintiffs assert three additional causes of action for breach of fiduciary duty against Optum, breach of fiduciary duty against Schwab, "statutory penalties" pursuant to a breach of 29 U.S.C. § 1132.

The parties have represented that Nathaniel is a member of a class action that was recently tried against United Behavior Health, operating as Optum, in this district. Wit v. United Behavioral Health, Case No. 14-cv-2346-JCS (N.D. Cal., filed May 21, 2014). In that case, the class seeks an order requiring Optum to "reprocess claims for residential treatment that it previously denied (in whole or in part) pursuant to new guidelines that are consistent with those that are generally accepted and with the requirements of applicable state law[.]" Id., FAC, Dkt. 39 at 65–66. Trial in the Wit action concluded on November 1, 2017, and it is under submission. Id., Dkt. 386. If the class prevails and obtains that remedy, Optum would likely reprocess Nathaniel's claims at issue in this action. See Dkt. 20 at 9. That outcome could moot some of the issues remaining in this case, although notably it would not moot plaintiffs' fourth claim, for statutory penalties.

Here, having in mind its obligation to "weigh competing interests and maintain an even balance," the court finds that a stay of the remaining claims is appropriate. Landis, 299 U.S. at 254–55. First, plaintiffs do not argue that damage will result from a stay, and

the court sees no reason to believe that any significant damage will result. Importantly, the <u>Wit</u> case has been tried and submitted. The court anticipates that case will soon be resolved. Finally, the potential to moot or otherwise resolve issues pending in this litigation—even though not all issues—weighs heavily in favor of granting a stay as the most efficient use of the court's and the parties' resources.

## CONCLUSION

For the reasons stated above, plaintiffs' first claim, for Recovery of Benefits Due Under an ERISA Benefit Plan, is DISMISSED WITH PREJUDICE as to all defendants. Plaintiffs' fourth claim, for Statutory Penalties pursuant to 29 U.S.C. § 1132, is DISMISSED WITHOUT PREJUDICE as to the Plan. The court RESERVES JUDGMENT on the remainder of the motion, and the case is STAYED until judgment is entered in <u>Wit v. United Behavioral Health</u>, Case No. 14-cv-2346-JCS (N.D. Cal., filed May 21, 2014). The parties shall file a joint status update with the court within 30 days of the date judgment is entered in <u>Wit</u>.

**IT IS SO ORDERED.**

Dated: July 26, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge